D. F. BRODERICK, INC., *v.* CONTINENTAL CREDIT CORP.

1. CORPORATIONS—MERGER—OBLIGATIONS OF RESULTING CORPORATION.
   Upon the merger of two corporations, the obligations of the merging corporations become the obligation of the resulting corporation.

2. INSURANCE — CORPORATIONS — AUTOMOBILES — FINANCING — CONSTRUCTION OF POLICY—ACCOUNTING.
   Ambiguously worded insurance policy, issued to cover interest of defendant corporations which financed motor vehicles on both a wholesale and retail basis, which policy was designed to cover cars eligible for coverage and insured thereunder and which also permitted defendants to finance dealers with or without insurance, *held,* not to have provided total insurance, there being no provision for accounting as to 'all vehicles financed.

3. SAME—CONSTRUCTION OF POLICY—AMBIGUITY.
   An insurance policy or contract prepared by the insurer is construed against the insurer where the contract is ambiguous.

4. SAME—AUTOMOBILE FINANCE COMPANIES—ACCOUNTING—COVERAGE.
   Under insurance policy covering interest of defendant finance companies in only such cars retailed to purchasers by dealers as defendants chose to cover with insurance but which was not to attach to vehicles for which insurance was not applied for, defendant was under no duty to account to insurer or its agent for vehicles financed by it but not insured through plaintiffs.

5. APPEAL AND ERROR—QUESTIONS REVIEWABLE—STIPULATIONS.
   The Supreme Court does not concern itself with question of paid or unpaid premiums under insurance policies with defendant finance companies where parties have stipulated that the only question involved was that of the liability of the defendants under the policies.

Appeal from Wayne; Toms (Robert M.), J. Submitted June 6, 1944. (Docket No. 13, Calendar No. 42,442.) Decided October 11, 1944. Rehearing denied December 1, 1944.

Bill by D. F. Broderick, Incorporated, a Michigan corporation, and Home Insurance Company—New York, a New York corporation, against Continental Credit Corporation and Contract Purchase Corporation, Michigan corporations, for an accounting and to restrain an action at law. Decree for defendants. Plaintiffs appeal. Affirmed.

*Wurzer, Higgins, Sweeney & Starrs (John T. Higgins* and *John R. Starrs,* of counsel), for plaintiffs.

*Fred Dye,* for defendants.

Sharpe, J. Plaintiffs filed their bill of complaint against defendants to enjoin an action at law by defendant Contract Purchase Corporation against plaintiff D. F. Broderick, Inc.; for a determination of rights and liabilities of the respective parties under two automobile insurance policies; for an accounting for premiums due under said policies from April 14, 1939, to January 31, 1941; and a refund on return premiums and allowances under said policies. The trial court entered a decree dismissing the bill, from which plaintiffs have taken this appeal.

Plaintiff D. F. Broderick, Inc., operated as general agent of several insurance companies and is an associate agent of the Home Insurance Company. Defendant Continental Credit Corporation -financed the purchase of automobiles by dealers at wholesale, and by individuals at retail, at their different offices throughout the State, and prior to

July 23, 1937, said defendant and its subsidiary sought a market for insurance on automobiles so financed by it. Plaintiff D. F. Broderick, Inc., procured a market for such insurance between the Home Insurance Company and said defendant, which company negotiated two so-called "master policies"—a "wholesale" policy which covered automobiles held in inventory by dealers and mortgaged by them to secure loans made to the dealers by the Continental Credit Corporation, and a "retail" policy which covered motor vehicles purchased by customers on deferred payment plans. Plaintiffs and defendant Continental Credit Corporation operated under said policies from the effective date thereof—July 23, 1937—until April 14, 1939, during which time the premiums paid to plaintiffs by said defendant averaged about $10,000 per month.

On April 14, 1939, an "agreement for merger" between defendants Continental Credit Corporation and Contract Purchase Corporation, with the Contract Purchase Corporation as the resulting corporation, was entered into, which merger provided, among other things, as follows:

"Contract Purchase Corporation shall, upon the execution, approval and filing of this agreement as provided by law, be possessed of all rights, privileges, powers, franchises, property, real, personal and mixed, debts, stock subscriptions, things in action, and all and every other interest of every kind and nature and shall be subject to all debts, liabilities, duties and obligations of whatsoever kind or nature, whether secured or unsecured, of Continental Credit Corporation, as provided by the statutes of the State of Michigan relating to merger of corporations, except as to subordinated obligations of Continental Credit Corporation, which are assumed in their subordinated position."

Prior to said merger defendant Contract Purchase Corporation conducted the business of financing the purchase of automobiles, with offices in Detroit. Subsequent to the merger it operated through its home office in Detroit and in the several offices taken over in the merger, with the exception of the Cleveland, Jackson and Flint offices which were sold shortly after the merger to other finance companies operating in those locations, and were doing business with the same dealers as defendant Continental Credit Corporation formerly did.

Plaintiffs claim that subsequent to the merger defendant Contract Purchase Corporation continued to operate the business formerly operated by defendant Continental Credit Corporation but failed to place insurance upon such business in accordance with the policies; refused to account to plaintiffs in relation to the number of motor vehicles financed by it in the course of operating the business formerly operated by Continental Credit Corporation subsequent to the merger of defendants, and since April 20, 1939, refused to make monthly reports to plaintiff as provided in the "wholesale" policy, and refused to make the daily reports to plaintiffs as provided in the "retail" policy, and that the Home Insurance Company has lost the benefit of the premiums, and D. F. Broderick, Inc., has lost the benefits of the commissions which would have been otherwise payable to them. Both policies were cancelled by plaintiffs in accordance with their terms, the effective date of termination being January 31, 1941.

Defendant Contract Purchase Corporation was not paid the moneys due it for refunds of premiums under the "retail" policy for the months of October and November, 1939, and on December 16, 1939, instituted suit in assumpsit in the common pleas court for the city of Detroit against plaintiff Broderick,

whereupon plaintiffs filed the bill of complaint in this cause and tendered the amount of the unpaid accruals for return premiums into court, to be held by the clerk of the court as a partial set-off against the amount due plaintiffs under an accounting as prayed for in the bill.

Defendant Contract Purchase Corporation claimed in its answer that both policies were terminated to all intents and purposes the day after the merger because of the fact that there were no placements of insurance for either of such contracts to become operative upon.

The trial court held that the master policies created no legally binding obligation on the part of defendants to place all their insurance business on automobiles financed by defendants with plaintiff Home Insurance Company, through plaintiff D. F. Broderick, Inc., and a decree was entered dismissing the bill and making such disposition of the moneys on deposit with the clerk of the court as was consistent with the court's opinion.

The principal question presented for review is the liability, if any, of defendant Contract Purchase Corporation to plaintiffs for premiums accruing under said policies from the effective date of the merger to the effective date of the termination of the policies by plaintiffs.

It is undisputed that if the policies issued by plaintiff to the Continental Credit Corporation created a legally binding obligation on the part of the Continental Credit Corporation that obligation followed the merger of the Continental Credit Corporation and the Contract Purchase Corporation and became an obligation of the resulting corporation. It thus becomes necessary to examine the two policies hereinbefore referred to.

Plaintiffs rely upon the following paragraphs of the wholesale policy in support of their claim of total insurance:

"1. Whereas the 'corporation' may or does finance on its wholesale plans the delivery of motor vehicles to 'dealers,' and the 'corporation' acquires an interest in such motor vehicles under the terms of trust receipts, storage warehouse consignment receipts, notes, accepted time drafts, chattel mortgages, conditional sales contracts and leases (hereinafter termed 'notes') and the 'corporation' desires to have all such motor vehicles in which it may have an interest insured (when said motor vehicles are not otherwise insured by the 'dealer' for the benefit of the 'corporation' and the 'dealer') against certain hazards, and; * * *

"5. As respects each motor vehicle financed on the 'corporation's' wholesale plans eligible for coverage and insured hereunder, the policy shall cover from the time of the preparation or execution of the 'notes' by the 'corporation' or the 'dealer' and shall cover continuously thereafter until the interest of all assureds in such 'notes' has been satisfied, or until the motor vehicles shall have been sold and delivered; (in such latter case, however, the interests of the 'assured' other than the 'dealer' shall be covered) or until this policy shall have been cancelled, as elsewhere provided herein. In the event of any 'note' being rejected by the 'corporation' when offered, this insurance will continue for a period of 30 days and no more, in so far as the interests of the 'dealer' are concerned (but as to the other assureds until their interests have been fully satisfied and liquidated) from the date the 'corporation' mails the notice of such rejection to the indorsers, drawers, makers and/or acceptors.

"6. It is intended that this policy will protect against the perils of fire, transportation, theft, rob-

bery and pilferage, as herein defined, any motor vehicle, including commercial and pleasure cars, trucks, tractors, trailers, buses, ambulances, funeral cars, hearses, taxicabs, and motorcycles or any part thereof or attached thereto financed on the wholesale floor plans of the 'corporation,' eligible for coverage and insured hereunder, and for which 'dealers' have executed 'notes' which are held or have been assigned to the 'corporation' while within the limits of the United States of America and Canada and while on the floor of the 'dealer' or any other place of storage, except as specifically excluded or limited by this policy, and including delivery by conveyance of any kind by land or water, or under their own power to warehouse or other place of storage, except as specifically excluded or limited by this policy, or to 'dealer' or 'bailee' from 'factory', 'warehouse' or 'railroad station' or other point of delivery and including also delivery by any form of conveyance by land or water or under their own power to a 'bailee' from the 'dealer' or other 'bailee'.  *  *  *

"11.  While this policy does not contemplate that the 'dealer' shall effect specific insurance on any of the motor vehicles covered hereunder at any location, it is expressly understood and agreed that the placing by the 'dealer' of such specific insurance at any location, without knowledge or consent of the 'corporation' or through inadvertence or misunderstanding, shall not invalidate the rights of the 'corporation' hereunder.  It is understood and agreed that this insurance shall be considered as excess insurance when any other insurance exists in the name of the 'assured' on any of the property insured, or where other insurance has been taken out in the name of others for the benefit of the 'assured,' and this insurance shall not apply or contribute to the payment of any loss until all such other insurance shall have been exhausted, but this provision does not affect the right of the 'corporation' to recover

hereunder to the extent of its interest, if such other insurance shall have been placed without their knowledge or consent, and the 'company' through the 'general agent' shall make payment promptly upon receipt of proof of loss, it being understood, however, that in every case where the existence of other insurance comes to the attention of the 'corporation' at its home office, at Jackson, Michigan, notice of the existence of this insurance will be given promptly to the 'company' through the 'general agent,' and the 'company' will be subrogated to all rights of the other 'assured' in any recovery collected by virtue of the existence of other insurance, to the extent of the net loss paid by the 'company.'
\* \* \*

"15. The omission or unintentional error on the part of the 'corporation' in the preparation of statement will be subject to rectification, provided same is communicated to the 'company' through the 'general agent' as soon as discovered and provided further that the omission or failure on the part of the 'corporation' to omit any transaction from statement sent to the 'company' coverable hereunder will not relieve the 'company' from its obligations hereunder, if it shall appear that the 'corporation' bona fide intended to bring such transaction under the operation of this policy and the 'assured' shall be liable for all agreed premiums thereon, it being agreed that this policy will, in accordance with its conditions, cover every motor vehicle which the books of the 'corporation' show to have been financed by it on its wholesale plans, and which motor vehicles are eligible for coverage and insured hereunder. All records, books, reports, statements of the 'corporation' relating to the transactions covered by this policy shall be open to inspection by the 'company' and/or the 'general agent' at any reasonable time."

Defendants urge that paragraphs 5, 6 and 15 are the only paragraphs in the policy which state what

cars are to be insured, and all paragraphs state that these are motor vehicles "eligible for coverage and insured hereunder." It is to be noted that the essential part of paragraph 6 reads as follows:

"It is intended that this policy will protect * * * any motor vehicle * * * financed on the wholesale floor plans of the 'corporation,' eligible for coverage *and insured hereunder,* and for which 'dealers' have executed 'notes' * * * except as specifically excluded or limited by this policy."

It is also to be noted that the following paragraph, in providing for an accounting, only requires the corporation to keep a record showing the amount of wholesale cost of the motor vehicle "eligible for coverage and insured hereunder":

"14. The 'corporation' agrees to keep an accurate record showing the amount of the wholesale cost to 'dealers' of the motor vehicles eligible for coverage and insured hereunder and to furnish the 'company' through the 'general agent' at the close of each month with a correct statement of average daily wholesale outstanding receivables covering motor vehicles (adjusted to the wholesale laid-down cost at the 'dealer's' place of business), outstanding during the preceding months. A rate of four and one-half cents per month shall be applied to each $100 of the average mean balance developed as per formulae attached hereto as exhibit 'A,' and the amount so obtained shall be the monthly premium for coverage provided under this policy which shall thereupon become due and payable to the 'company' through the 'general agent.' "

In our opinion the policy does not provide for total insurance. If it was intended that every motor vehicle financed by the corporation must be insured, it would have required an accounting on all vehicles

financed.  Moreover, it is to be noted that this whole-
sale policy is ambiguous in its terms.  Obviously, it
is a contract prepared by the insurer, or its general
agent, and therefore must be construed against the
insurer.  See *In re Petition of Hume,* 260 Mich. 555.
Being so construed, it must be held that it does not
provide for total insurance.

The retail policy covers retail sales of motor ve-
hicles on the deferred payment plan.  It covers such
risks as fire, theft, transportation, robbery and pil-
ferage.  In order to ascertain what cars are covered
by the policy it is necessary to refer to paragraph
17, which reads as follows:

"17.   Application for acceptance and evidence of
coverage.   The 'named assured' shall send to the
'company' through the 'general agent' at the close
of business each day an application in the form
agreed setting forth each transaction to be covered
hereunder and the standard information required by
the 'company' in regard thereto and coverage shall
not attach on any motor vehicle not so applied for.
The acceptance of each risk and the particulars of
coverage thereon, including the perils insured
against, and the premium paid thereon, shall be evi-
denced by a subordinate policy, notice or certificate
of participation issued hereunder and forming a
part hereof by the 'company' through the 'general
agent' hereunder and each subordinate policy, notice
or certificate of participation is hereby made a part
of this policy subject to its terms and to any
special conditions indorsed on such individual sub-
ordinate policy, notice or certificate of participation
which the 'general agent' will mail or cause to be
mailed to the 'purchaser/assured.' "

Under the preceding paragraph it is provided that
coverage shall not attach to any vehicle not applied

for. Such provision indicates that the Continental Credit Corporation would have some discretion in determining whether it would finance a vehicle "with insurance" or "without." Under the foregoing paragraph there need not be coverage unless the company finances on the "with insurance" plan. Under the "retail policy" the Continental Credit Corporation has the discretion of not insuring vehicles.

In view of the fact that the interested parties have stipulated that the only question is the liability of the defendants under the policies, we are not concerned with the paid or unpaid premiums, and are in accord with the finding of the trial judge,—"certainly, there is no provision in the policies which definitely, specifically and unequivocally imposes on the defendants the legal duty to place all their business with the plaintiffs."

The decree of the trial court is affirmed, with costs to defendants.

NORTH, C. J., and STARR, WIEST, BUTZEL, BUSHNELL, BOYLES, and REID, JJ., concurred.